IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Community College of Philadelphia,

                    Petitioner

                v.

Pennsylvania Labor Relations Board,

                    Respondent

:
:
:
:
:
:
:
:
: No. 613 C.D. 2017
: Argued: November 15, 2018
:
:
:
:
:
:

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge


OPINION BY JUDGE WOJCIK               FILED:  March 13, 2019

         Community College of Philadelphia (College) petitions for review from a final order of the Pennsylvania Labor Relations Board (Board) that dismissed its exceptions and declared the decision of the Secretary of the Board declining to issue a complaint and dismissing the College's charge of unfair labor practices against the Faculty and Staff Federation of the Community College of Philadelphia, Local 2026, AFT, AFL-CIO (Union) as final and absolute.[1] The College claims that the Board erred or abused its discretion by declining jurisdiction where its charge asserted a claim that the Union engaged in bad faith bargaining, which falls under the Board's

---

[1] This case was argued seriately with *Community College of Philadelphia v. Faculty and Staff Federation of the Community College of Philadelphia, Local 2026, AFT, AFL-CIO* (Pa. Cmwlth., No. 1729 C.D. 2017, filed March 12, 2019) (*Faculty and Staff Federation*).

jurisdiction under the Pennsylvania Public Employe Relations Act (PERA).[2]  Upon review, we affirm.

## I. Background

On February 13, 2017, the College filed a charge of unfair labor practices (Charge) against the Union with the Board.  Certified Record (C.R.) at 1-3.  The College is a "public employer" within the meaning of Section 301(1) of the PERA, 43 P.S. §1101.301(1).   The Union is an "employe organization" under Section 301(3) of the PERA, 43 P.S. §1101.301(3), representing full-time faculty at the College, among others.  The College and the Union are parties to a collective bargaining agreement (CBA), which expired on August 31, 2016.  The parties continue to operate under the terms of the expired agreement, with the Union-represented faculty continuing to receive full pay and benefits.  The parties are currently in negotiations for a successor agreement.  C.R. at 3.

The College is an open admission institution serving the Philadelphia area and approximately 30,000 students each year, offering associate degrees and academic and proficiency certificates.  The College alleged that, in order for it to maintain its accreditation, the Middle States Commission on Higher Education requires the College to engage in a continuous cycle of assessment of student learning outcomes and to use the results to improve and update courses, curricula and teaching methods.  These assessments require full-time faculty to examine and review each course and curriculum to ensure that students are meeting established course learning outcomes.  The performance of assessment work is a professional responsibility of each full-time faculty member and a required duty under the expired CBA and past practice.  C.R. at 3.

---

[2] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101-1101.2301.

The College asserted that, beginning in November 2016, and continuing through the present, the Union instructed the full-time faculty "to refuse to perform mandated assessment work," while continuing to accept full pay and benefits. C.R. at 3. The College demanded the Union to "cease and desist from unlawfully instructing its members to refuse to perform assessment work." C.R. at 3. Despite this demand, the Union has continued its unlawful instruction to its members. C.R. at 3.

The College charged that the Union and its members are engaging in an "unlawful partial strike" in violation of Sections 1201(b)(3) and 1006 of the PERA, 43 P.S. §§1101.1201(b)(3), 1101.1006. C.R. at 3. The College claimed that the Union's conduct is creating a clear and present danger to its accreditation and programs. Loss of accreditation would severely impact the College's eligibility for government funding and its students' eligibility for financial assistance. The College requested the Board to order the Union and its members "to immediately cease and desist from their unlawful conduct and resume performance of the assessment work." C.R. at 3.

By letter dated February 22, 2017, the Secretary of the Board declined to issue a complaint on the basis that the Board lacked the authority to enjoin a strike under the PERA. The Secretary advised that a public employer's request to enjoin a strike by public employees must be filed in the court of common pleas. C.R. at 4.

On March 15, 2017, the College filed timely exceptions to the Secretary's refusal to issue a complaint. The College clarified it was "not asking the Board to enjoin any conduct" of the Union or its members. C.R. at 6. Rather, the College asserted that it was requesting the Board to "declare [that] the [Union's] instructions to its members to refuse to perform assessment work" is unlawful under

3

Sections 1201(b)(3) and 1006 of the PERA. C.R. at 6. The College amended its Charge to reflect it was seeking a declaration and not an injunction. C.R. at 12.

On April 18, 2017, the Board issued a final order dismissing the College's exceptions and affirming the Secretary's decision declining to issue a complaint and dismissing the Charge. C.R. at 13-16. The Board concluded that the legality of a strike must be determined by the courts rather than the Board. *Id.* Where an alleged strike has not been enjoined by the courts, it does not constitute a failure to bargain in good faith. *Id.* From this decision, the College petitioned for review in this Court.[3]

## II. Issue

On appeal, the College contends that the Board erred by dismissing its exceptions on the basis it lacks the authority under the PERA to issue a complaint under the facts presented. The College asserts that the Board has exclusive authority under Section 1301 of the PERA, 43 P.S. §1101.1301, to prevent the Union from engaging in any unfair practice, including refusing to bargain collectively in good faith under Section 1201(b)(3). According to the College, the Union has engaged in bad faith bargaining by instructing its faculty members to refrain from performing mandated assessment work while continuing to receive full pay and benefits, without acknowledging that it is engaged in a partial strike. The Union's conduct allows its members to gain the benefits of striking while avoiding any of the associated

---

[3] On September 15, 2017, the College filed a Complaint with the Court of Common Pleas of Philadelphia County (trial court) requesting it to enjoin the alleged partial strike. The trial court dismissed the College's Complaint on preliminary objections upon concluding that the gravamen of the College's Complaint was that of an unfair labor practice over which the Board exercises exclusive jurisdiction. The College timely appealed the decision to this Court. *See Faculty and Staff Federation*.

4

burdens, thereby disrupting the PERA's delicate balance of collective bargaining rights and obligations. The College maintains that the Board's failure to act has had real consequences for the College, which must continue to negotiate with the Union in the face of bad faith bargaining tactics.[4]

### III. Discussion

We begin by examining our review of Board determinations. "All final Board orders, including those refusing to institute an unfair practice complaint, are subject to judicial review." *Pennsylvania State Park Officers Association v. Pennsylvania Labor Relations Board*, 854 A.2d 674, 679 (Pa. Cmwlth. 2004), *appeal denied*, 871 A.2d 194 (Pa. 2005). "The issuance of an unfair practice complaint is a discretionary determination of the Board." *Id.* "When the Board assumes that alleged facts are true and where the allegations do not demonstrate an unfair labor practice, the Board properly declines to issue a complaint." *Id.* "We do not set aside the Board's discretionary acts in the absence of bad faith, fraud, capricious action or abuse of power." *Id.* "Given the Board's administrative expertise in the area of public employee labor relations, 'great deference ought to be given to the [Board]'s assessment of the often competing concerns relevant to the issue of whether the conduct of an employer or a union constitutes a refusal to meet the mutual obligation to bargain in good faith.'" *Id.* (quoting *City of Philadelphia v. Pennsylvania Labor Relations Board*, 588 A.2d 67, 71 (Pa. Cmwlth.), *appeal denied*, 598 A.2d 285 (Pa. 1991)).

---

[4] The Union intervened, but did not file a brief.

The Board has exclusive jurisdiction over charges of unfair labor practices. Section 1301 of the PERA, 43 P.S. §1101.1301;[5] *Hollinger v. Department of Public Welfare*, 365 A.2d 1245, 1248-49 (Pa. 1976). Section 1201 of the PERA, 43 P.S. §1101.1201, sets forth prohibited unfair practices. Of relevance here, Section 1201(b)(3) of the PERA prohibits employee organizations, their agents, or representatives or public employees from "[r]efusing to bargain collectively in good faith with a public employer, if they have been designated in accordance with the provisions of this act as the exclusive representative of employes in an appropriate unit."[6] 43 P.S. §1101.1201(b)(3). Courts have applied this provision when a union

---

[5] Specifically, Section 1301 of the PERA provides:

> The board is empowered, as hereinafter provided, to prevent any person from engaging in any unfair practice listed in Article XII of this act. This power shall be exclusive and shall not be affected by any other means of adjustment or prevention that have been or may be established by agreement, law, or otherwise.

43 P.S. §1101.1301.

[6] Other prohibited unfair practices include strikes, but in limited contexts, which have not been asserted here:

> (6) Calling, instituting, maintaining or conducting a strike or boycott against any public employer or picketing any place of business of a public employer *on account of any jurisdictional controversy*.

> (7) Engaging in, or inducing or encouraging any individual employed by any person to engage in a strike or refusal to handle goods or perform services; or threatening, coercing or restraining any person where an object thereof is *to (i) force or require any public employer to cease dealing or doing business with any other person or (ii) force or require a public employer to recognize for representation purposes an employe organization not certified by the board.*

43 P.S. §1101.1201(b)(6)-(7) (emphasis added).

6

refuses to bargain without a sound arguable basis.  *See State System of Higher Education v. Pennsylvania Labor Relations Board*, 821 A.2d 156, 158 n.2 (Pa. Cmwlth.), *appeal denied*, 832 A.2d 437 (Pa. 2003) (a charge that a union has refused to bargain in good faith will not be sustained if it is found that the union had a "sound arguable basis" for believing that its decision or action conformed with a collective bargaining agreement); *Ford v. School District of Philadelphia*, 453 A.2d 705, 707 (Pa. Cmwlth. 1982) (failure of union to represent interest of all its members in good faith and without discrimination is unfair labor practice over which Board has exclusive jurisdiction).

While the Board has exclusive jurisdiction over unfair practices, the courts exercise jurisdiction over strikes prohibited under Article X of the PERA. Sections 1001, 1002 and 1003 of the PERA, 43 P.S. §§1101.1001, 1101.1002, 1101.1003; *see Armstrong School District v. Armstrong Education Association*, 595 A.2d 1139, 1143 (Pa. 1991) (Section 1003 of the PERA confers equity jurisdiction upon the court of common pleas once a public employer seeks relief from a strike); *City of Scranton v. Pennsylvania Labor Relations Board*, 505 A.2d 1360, 1363 (Pa. Cmwlth. 1986) (a contest as to the validity or legality of a strike is reserved for the courts).  Section 301(9) of the PERA defines a "strike" as:

> [C]oncerted action in failing to report for duty, the willful absence from one's position, the stoppage of work, slowdown, or the abstinence in whole or in part from the full, faithful and proper performance of the duties of employment for the purpose of inducing, influencing or coercing a change in the conditions or compensation or the rights, privileges, or obligations of employment.

43 P.S. §1101.301(9).  The courts are empowered to grant equitable relief, including but not limited to injunctions, when a strike is challenged under the PERA. 43 P.S. §§1101.1001, 1101.1002, 1101.1003; *see, e.g.*, *Armstrong* (court possessed

authority to enjoin work stoppage and to direct parties to attend bargaining sessions of a frequency and duration determined by the court).

Specifically, Section 1001 of the PERA prohibits strikes by guards at prisons or mental hospitals or employees directly involved with the functioning of the courts. 43 P.S. §1101.1001. "If a strike occurs[,] the public employer shall forthwith initiate in the *court of common pleas of the jurisdiction where the strike occurs*, an action for appropriate equitable relief including but not limited to injunctions." *Id.* (emphasis added). If the strike involves Commonwealth employees, the action may be filed in the Commonwealth Court. *Id.*

Section 1002 prohibits strikes during negotiation and mediation, providing:

> Strikes by public employes during the pendency of collective bargaining procedures set forth in sections 801 and 802 of Article VIII are prohibited. In the event of a strike during this period the public employer shall forthwith initiate an action for the same relief and *utilizing the same procedures required for prohibited strikes under section 1001*.

43 P.S. §1101.1002 (emphasis added).

Of relevance here, Section 1003 of the PERA permits a strike after certain conditions are met provided it does not create a clear and present danger or threat to the health, safety or welfare of the public. 43 P.S. §1101.1003. Specifically, Section 1003 provides:

> If a strike by public employes occurs *after the collective bargaining processes set forth in sections 801 and 802 of Article VIII of this act have been completely utilized and exhausted, it shall not be prohibited unless or until such a strike creates a clear and present danger or threat to the health, safety or welfare of the public. In such cases the public employer shall initiate, in the court of common*

8

> *pleas of the jurisdiction where such strike occurs*, an action for equitable relief including but not limited to appropriate *injunctions* and shall be entitled to such relief if the court finds that the strike creates a clear and present danger or threat to the health, safety or welfare of the public. . . . Hearings shall be required before relief is granted under this section and notices of the same shall be served in the manner required for the original process with a duty imposed upon the court to hold such hearings forthwith.

*Id.* (emphasis added). Partial or selective strikes fall within the purview of Section 1003 and may be enjoined if they create a clear and present danger or threat to the health, safety and welfare of the public. *Wilkes-Barre Area Education Association v. Wilkes-Barre Area School District of Luzerne County*, 523 A.2d 1183, 1185 (Pa. Cmwlth. 1987).

Further, Section 1006 of the PERA provides: "No public employe shall be entitled to pay or compensation from the public employer for the period engaged in any strike." 43 P.S. §1101.1006. Where a cause of action alleges that a public employer unlawfully withheld accrued wages or other compensation from striking professional employees, it is an unfair labor practice within the meaning of Section 1201(a)(1) of the PERA,[7] and falls within the jurisdiction of the Board. *Bailey v. Ferndale Area School District*, 454 A.2d 207, 210 (Pa. Cmwlth. 1982). However, where a cause of action alleges that the striking public employees received compensation during the strike in violation of Section 1006 of the PERA, jurisdiction lies in the trial court. *See Woodland Hills Education Association, PSEA/NEA v. Woodland Hills School District*, 508 A.2d 365, 366 (Pa. Cmwlth.

---

[7] This section prohibits public employers from "[i]nterfering, restraining or coercing employes in the exercise of rights guaranteed in Article IV of this act [including the right to strike]." 43 P.S. §1101.1201(a)(1).

9

1986) (court of common pleas considered the issue of whether compensation received during strike must be repaid to the public employer).

In *City of Scranton v. Pennsylvania Labor Relations Board*, 505 A.2d 1360, 1363 (Pa. Cmwlth. 1986), we held that the public employer (the city) was expressly required to contest the validity of the strike in the court of common pleas before taking any retaliatory action. *Id.* There, the city had refused to engage in the mediation process and, as a result, the union and employees engaged in a strike. *Id.* at 1361. The city responded by discharging five employees for instigating and taking part in the alleged unlawful strike. *Id.* at 1361-62. Following the terminations, the union filed a charge of unfair practices with the Board. The Board rejected the city's argument that the Board must determine the legality of the strike under Section 1001 in connection with the alleged unfair practice of retaliation for engaging in a protected activity. On appeal, we affirmed, explaining:

> [T]he Board specifically declined to determine the timeliness of the strike under these sections because that function *is strictly reserved to the courts* by Sections 1001 and 1005 of [the] PERA[, 43 P.S. §§1101.1001 and 1101.1005.[8]] The Board reasoned that it was the [c]ity which first aborted the collective bargaining process by refusing to negotiate further and that its subsequent discharge of the employees outside the PERA guidelines constituted an unfair labor practice.

*Id.* at 1363 (emphasis added).

In support of its position that a union violates its good faith bargaining obligation when it instructs its bargaining unit members to cease performing selected job duties as part of a bargaining strategy, the College relies on *Pennsylvania Labor*

---

[8] Section 1005 of the PERA is premised on violating a lawful order of the court, such as an injunction order, and Section 1001 requires the public employer to first seek an injunction of a strike in the court of common pleas. 43 P.S. §§1101.1001 and 1101.1005.

10

*Relations Board v. West Chester Area School District*, 9 PPER ¶9095 (Nisi Decision and Order, 1978), *aff'd*, 10 PPER ¶10067 (Final Order, 1979). In *West Chester*, the public employer charged, *inter alia*, that the union violated Section 1201(b)(3) of the PERA by withholding services and engaging in a deliberate slowdown of work activity. The Board exercised jurisdiction because the allegations involved an interpretation of the definition of a strike. The Board found that the "slowdown" was undertaken for the purpose of inducing, influencing or coercing the employer to change the employees' obligations of employment. The Board concluded that the action constituted a strike. The Board also determined that the union's unilateral action of refusing to attend faculty meetings prior to the exhaustion of the PERA's impasse procedures disrupted the status quo and constituted a violation of the union's duty to bargain in good faith with the employer.

As the Board points out, *West Chester* is distinguishable and not controlling here. *West Chester* involved charges filed by the union and the employer in a consolidated action. The gravamen of the charges alleged acts of refusing to bargain, refusing to sign an agreement, harassment, and other unfair practices expressly prohibited by Section 1201 of the PERA, properly within the Board's exclusive jurisdiction. Although the Board found that the union's actions constituted a partial strike, it did not enjoin the strike. Further, the Board's jurisdiction over the strike was not questioned in *West Chester*, and *West Chester* was not appealed to this Court. Decisions of the Board, while instructive, are not binding on this Court. *Capital City Lodge No. 12, Fraternal Order of Police v. Pennsylvania Labor Relations Board*, 30 A.3d 1241, 1244 n.2 (Pa. Cmwlth. 2011), *appeal denied*, 44 A.3d 1162 (Pa. 2012). Moreover, *West Chester* is at odds with the Supreme Court's decision in *Armstrong*, 595 A.2d at 1143, and this Court's decision in *City of*

11

*Scranton*, 505 A.2d at 1363, which clearly hold that the courts of common pleas maintain jurisdiction over strikes prohibited under Sections 1001, 1002 and 1003 of the PERA, not the Board.

Here, although the College charged that the Union engaged in an unfair practice under Section 1201(b)(3) of the PERA, C.R. at 1, it did not allege any facts that the Union refused or failed to bargain collectively in good faith. *See State System*; *Ford*. Rather, the College alleged that the Union "instructed its members to refuse to perform mandated assessment work." C.R. at 6, 12. The College refers to the faculty's refusal to perform assessment work as a "partial strike." *Id.* The College also alleged that the faculty members are continuing to receive full compensation despite their refusal to perform mandated work in violation of Section 1006 of the PERA. C.R. at 6, 12. The College and Union are currently engaged in contract negotiations. C.R. at 6, 12. And, the College alleged that the Union's behavior is "creating a clear and present danger" to the College's accreditation, which mirrors the language contained in Section 1003 of the PERA. C.R. at 6, 12.

Although the College initially requested the Board to order the Union and its members to "cease and desist," C.R. at 6, it later amended the Charge by asking the Board to "declare" the Union's instructions unlawful and grant such other relief as appropriate.[9] C.R. at 12. However, merely changing the nature of the equitable relief sought did not change the nature of the offending conduct – an alleged partial strike. C.R. at 3, 12. Once a public employer seeks relief from a strike as prohibited under Sections 1001, 1002 or 1003 of the PERA, jurisdiction is vested with the courts of common pleas, not the Board. 43 P.S. §§1101.1001,

---

[9] The original statement of the Charge and the amended statement are identical but for the relief requested. *Compare* C.R. at 3 *with* C.R. at 12.

1101.1002, 1101.1003; *Armstrong*, 595 A.2d at 1143; *City of Scranton*, 505 A.2d at 1363.

Insofar as the College asks this Court to treat the Union's instructions to its members to refuse to perform assessment work as separate from the members' subsequent refusal to perform assessment work in order to maintain an unfair practice claim with the Board, we decline to do so. The Union's instruction to its members to cease performing assessment work is akin to calling or instituting a strike. As such, it is part and parcel of a "concerted action" to strike. *See* 43 P.S. §1101.301(9). Thus, we conclude that the Union's instruction and its members' actions in accord thereto are inextricably intertwined for purposes of establishing jurisdiction under the PERA.

## IV. Conclusion

Upon review, the Board assumed the truth of the alleged facts and determined that the College did not allege an unfair labor practice but rather a partial strike that was creating a clear and present danger to the College's accreditation, over which jurisdiction is vested within the courts of common pleas. *See* 43 P.S. § 1101.1003. Thus, the Board did not err or abuse its discretion by upholding the Secretary's decision declining to issue a complaint and dismissing the College's charge of unfair practices. Accordingly, we affirm.

MICHAEL H. WOJCIK, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Community College of : 
Philadelphia, : 
 : 
 : 
                 Petitioner : 
 : 
         v. : No. 613 C.D. 2017
 : 
Pennsylvania Labor Relations : 
Board, : 
 : 
             Respondent : 

## O R D E R

AND NOW, this 13th day of March, 2019, the order of the Pennsylvania Labor Relations Board, dated April 18, 2017, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge